IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PWG-15-141 |
| | * | |
| WILLIE J. BLAND, | * | |
| | * | |
| Defendant | * | |
| | * | |
| | * | |

## MEMORANDUM OPINION

The Court has received Defendant's COVID-19 Motion for Reconsideration of Bond ("Defendant's Motion"), ECF No. 92. The Court has reviewed Defendant's Motion and the Opposition thereto. ECF Nos. 94. No hearing is deemed necessary. Local Rules 105.6 and 207 (D. Md.). The Court hereby DENIES Defendant's Motion.

### I.     Relevant Procedural History

On March 3, 2016, Defendant pled guilty to (1) knowingly possessing a firearm as a felon and (2) possession with intent to distribute heroin. ECF No. 27. Defendant was sentenced to 33 months' incarceration and three years' supervised release to begin upon release from imprisonment. ECF No. 43. On March 9, 2018, Defendant commenced his supervised release. *Id.* On June 5, 2019, after the U.S. Probation and Pretrial Services filed five separate petitions alleging violations of supervised release, Defendant pled guilty to three separate violations, namely:

> (1) [Defendant] shall not illegally use or possess a controlled substance; (2) [Defendant] shall not commit any federal, state, or local crime and [Defendant] shall not leave the judicial district without the permission of the court or probation officer; and (3) [Defendant] shall notify the probation officer within 72 hours of being arrested, charged, or questioned by a law enforcement officer.

*Id.* As a result of Defendant's plea, Defendant's supervised release was extended until September 9, 2021. ECF No. 73.

On February 7, 2020, an arrest warrant was issued for Defendant after the U.S. Probation and Pretrial Services filed a petition alleging thirteen new violations of terms of Defendant's supervised release. ECF No. 83. After initially consenting to detention, ECF No. 85, Defendant filed a motion for a detention hearing requesting release to the custody of a third-party custodian. ECF No. 89. On March 11, 2020, after a detention hearing before this Court, an order of detention was entered. ECF No. 91. The Court found that: "there is probable cause to believe that [Defendant] committed the offense(s) charged [and that] Defendant has failed to show by clear and convincing evidence he is not a danger to the community." *Id*.

Defendant now seeks review of this Court's order of detention due to the outbreak of the Corona virus ("COVID-19") and requests that the Court set conditions of release placing Defendant under "24-hour lockdown with electronic monitoring in the home of his third party custodian." Def.'s Mot. for Recons. of Bond 1, ECF No. 92.

**II.     Analysis**

Defendant contends that he "suffers from asthma and seizures which places him in the high risk category for enhanced vulnerability to complications from COVID-19 infection." *Id.* Defendant further contends that the conditions at the D.C. Department of Corrections ("DOC") facilities are unsafe and therefore release is appropriate. *Id*. at 2–7. The Government avers that: (1) Defendant fails to account for the factors under the Bail Reform Act, 18 U.S.C. § 3142; (2) the DOC has established comprehensive procedures to avoid COVID-19 outbreak; and, (3) Defendant's health concerns do not merit release. Gov't Opp'n to Mot. to Reopen Det. Hr'g 3–17, ECF No. 94.

Under the Bail Reform Act, a detention hearing determination:

> [M]ay be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added).

a. **The COVID-19 Pandemic**

The presence of the COVID-19 creates a "material bearing" on the issue of whether there are conditions of release that can protect the community from the danger that Defendant presents. Yet, this Court has stated that the mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *See United States v. William Bilbrough, IV*, TDC-20-33 (D. Md. Mar. 20, 2020) (denying the defendant's motion even though the defendant suffered from diabetes); *United States v. Julius Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year old defendant's motion); *United States v. Anthony Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Mar. 31, 2020) (denying the defendant's motion even though the defendant suffered from a heart murmur); *United States v. Marvin Gray*, No. GJH-19-407, 2020 WL 1554392 (D. Md. Apr. 1, 2020) (denying the defendant's motion even though the defendant had open heart surgery as a child, has a diminished immune system, heart flutters, and shortness of breath); *United States v. Derek Crosby*, No. ELH-19-0286, 2020 WL 1638685 (D. Md. Apr. 2, 2020) (denying the defendant's motion despite his previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler); *United States v. Ronald McCormick*, GLR-19-318 (D. Md. Apr. 2, 2020) (denying the defendant's motion despite testing positive for COVID-19); *United States v. Jermaine Pate*,

PWG-17-236 (D. Md. Apr. 7, 2020) (denying the defendant's motion even though he suffered from asthma); *United States v. Kair Mugaddim*, TDC-19-380 (D. Md. Apr. 9, 2020) (denying the defendant's motion because the defendant failed to show why he was an at-risk inmate); *United States v. Terrell West*, No. ELH-19-364, 2020 WL 1820095 (D. Md. Apr. 10, 2020) (denying the defendant's motion despite testing positive for coronavirus); *United States v. Bernadette Attia*, PWG-19-193 (D. Md. Apr. 13, 2020) (denying the defendant's motion even though he suffered from asthma and migraines); *United States c. Damien Smith*, SAG-20-47 (D. Md. Apr. 14, 2020) (denying the defendant's motion even though he suffered from asthma).

Defendant argues at length, citing to a variety of sources, that the DOC procedures fall short of the preventative measures outlined by the Center for Disease Control ("CDC"). Def.'s Mot. for Recons. of Bond 2. Defendant argues that "[c]ontrary to the picture the [DOC] has attempted to paint of the steps it is taking to prepare for COVID-19, the reality—based on firsthand reports— is that the [DOC] is failing to protect incarcerated people on multiple fronts." *Id.* at 4. Specifically, Defendant avers that the DOC's procedures fall short because of: (1) lack of testing; (2) incarcerated individuals do not have adequate access to medical attention; (3) people at the [DOC] facilities are not given tools for proper hygiene; and (4) the [DOC] facilities are not thoroughly cleaned to prevent the spread of disease. *Id.* at 4–6.

As outlined by the Government, the DOC has taken and continues to take substantial steps to mitigate the effect of COVID-19. Gov't Opp'n to Mot. to Reopen Det. Hr'g 11. This includes policies that: preclude non-legal visitations; require inmate screening; quarantine of infected inmates; extra cleaning; cancelling certain inmate activities; and reducing the time inmates spend outside their cells. *Id*. at 11–13. Despite Defendant's contention that the DOC's procedures are not sufficient, recent opinions in this district say otherwise. *United States v.*

*Cheyenne Ellison*, ELH-19-286 (D. Md. Apr. 14, 2020) (stating that the procedures and protocols set forth by CTF are reasonable under the circumstances); *West*, 2020 WL 1820095, at *5 (concluding that the defendant's argument that the DOC's preventative measures fall short is "unavailing" because the situation is rapidly evolving and the DOC "has repeatedly revised its procedures"); *United States v. Michael Christian*, DKC-20-19 (D. Md. Apr. 6, 2020) (stating that the defendant's assertion that detention facilities are "ill-equipped to handle" a defendant's medical concerns is directly contradicted by the Government and discusses the measures the detention facility has set in place).

The Court finds that Defendant rightfully questions whether the DOC's actions are sufficient, however, the plan that has been put in place by the DOC "should not be summarily embraced or discarded. Nor does it follow that a presumption of release materializes without more details about the impact upon [Defendant] directly." *United States v. Julius Williams*, PWG 13-544 (D. Md. Mar. 24, 2020); *Gray*, 2020 WL 1554392, at *2 ("There is no reason for the Court to believe that the jail is not taking reasonable precautions to prevent spread within that facility nor is there reason to believe that [an inmate] would not be provided with appropriate medical care if he were unfortunate enough to join the hundreds of thousands of people who have been inflicted with this virus.").

Defendant cites to several cases in the United States District Court for the District of Columbia ("USDCDC") which granted release due to COVID-19 and avers that "District and Magistrate Judges in the [USDCDC] are quite familiar with the [DOC] facilities because detainees in that District are typically housed in [the DOC] facilities." Def.'s Mot. for Recons. of Bond 7. This Court agrees with Defendant in that courts in the District of Columbia are well familiar with the DOC facilities, however, the courts in this district are also familiar with the

DOC as many of its defendants are placed in detention facilities in the District of Columbia. To date, from the start of the COVID-19 pandemic, this district has issued a plethora of opinions regarding the status of the DOC facilities.

Lastly, Defendant at no point provides medical records which substantiate his claims of asthma and seizures. There is no indication that Defendant has been in contact with any detainees who have been diagnosed with the virus. It is not for the Court to speculate where the "fine line" might be crossed where the scales weigh more favorably toward release. But on this record, it has not been crossed.

### b. Bail Reform Act

The Court has a duty to balance the factors of the Bail Reform Act, with the overlay of concerns about the health and safety of Defendant and the community at large. Here, Defendant has been charged with thirteen separate violations of his conditions of supervised release. Among his alleged violations, Defendant "sold cocaine to an undercover police officer on five separate occasions, and was prepared to sell cocaine to the undercover police officer on a sixth occasion when law enforcement officers executed a search warrant to the defendant's house." Gov't Opp'n to Mot. to Reopen Det. Hr'g 7. According to the Government, "[i]n total, through the undercover buys and during the search warrant at [Defendant's] house, law enforcement officers recovered approximately 132 grams of cocaine and 260 grams of marijuana." *Id.*

The Court finds Defendant's risk of flight is substantial. Defendant has failed to show that he is capable of following any rules set forth by the Court during normal times, let alone during a pandemic. Now, with the pandemonium that surrounds COVID-19 and Defendant facing further incarceration, the risk of Defendant violating conditions of release is heightened. Moreover, as of April 10, 2020, traditional electronic home monitoring which provides real-time

information about a Defendant's whereabouts is not available due to COVID-19.  *West*, 2020 WL 1820095, at *5 ("[T]he usual tools of supervision are not readily available, as they have been adversely affected by the COVID-19 outbreak.").  Hence, the Court not only lacks confidence Defendant will not flee, but also does not have the technology to track Defendant should he not comply with the conditions of his release.  Lastly, given the sheer quantity of narcotics Defendant has shown that he is capable of obtaining and distributing, Defendant poses a significant danger to the safety of the community.

The Court acknowledges the tragic effects of the COVID-19 outbreak in our communities and in the detention centers.  As alluded to during the detention hearing of March 11, 2020, the specter of an outbreak of the virus in the detention facilities was probable.  While the gravity of the pandemic was then unknowable, it is still unknowable as to when it will peak or subside.  Nonetheless, the COVID-19 outbreak does not relieve the Court of its duty to ensure the safety of the community and Defendant's appearance at trial.

### III.    Conclusion

Defendant has failed to demonstrate that the changed circumstances created by the COVID-19 crisis sufficiently tips the scales of detention to reverse the earlier decisions by the Court.   Accordingly, Defendant's Motion is denied.

April 16, 2020                                                                /s/
                                                              Charles B. Day
                                                              United States Magistrate Judge


CBD/hjd